Brent T. Robinson, Esq., ISB No. 1932
Kelly Arthur Anthon, Esq., ISB No. 6575
ROBINSON, ANTHON & TRIBE
Attorneys at Law
615 H Street
P.O. Box 396
Rupert, ID  83350-0396
Telephone No. (208) 436-4717
Facsimile No. (208) 436-6804
Email Address:  btr@idlawfirm.com
                kaa@idlawfirm.com

Attorneys for Debtor

UNITED STATES BANKRUPTCY COURT
DISTRICT OF IDAHO

| | | |
|---|---|---|
| In Re: | ) | Case No.  11-40836 |
| | ) | (Chapter 11) |
| ROCHA DAIRY, LLC | ) | |
| aka ROCHA FARMS, | ) | |
| | ) | |
| Debtor. | ) | |

**AMENDED**
<u>MOTION FOR EMERGENCY AND CONTINUING USE OF CASH COLLATERAL</u>
(Amended only to include emergency cash collateral use for one-half of July)

COMES NOW the debtor in the above-entitled matter and, pursuant to 11 USC §363, move the Court on an emergency basis for an order authorizing debtor in possession to use cash collateral.  This motion is made and based upon the following facts:

1.  Debtor filed a petition under Chapter 11 of the United States Bankruptcy Code on May 25, 2011, and continues in possession of their property and the operation of its business as debtor in possession.

2. To the best of debtor's knowledge, information and belief, the secured creditors claiming a lien against various assets, including, among other things, debtor's cows, offspring, milk, equipment and real estate is D. L. Evans Bank, MetLife and Rocky Mountain

Amended Motion . . . Use of Cash Collateral - 1

merchandising. As of the date of the petition, i.e. May 25, 2011, the amount owed to D. L. Evans Bank is the approximate sum of $3,614,699.45, the amount owed to MetLife is the approximate sum of $3,933,015, and the amount owed to Rocky Mountain Merchandising is approximately $144,675, and it is the cash collateral of said creditors that is sought to be used by the debtor.

       3. In the course of debtor's operation, debtor has collected or will collect those sums reflected on the attached budget attached hereto as Exhibit "A" and incorporated herein by reference.

       4. The proceeds from the sale of milk and cull cows will be used to pay operating expenses.

       5. In accordance with the requirements of 11 USC §363(c)(4), such proceeds will be segregated into a separate bank account.

       6. Debtor does not have sufficient income to continue its operation without the use of cash collateral, and seeks authorization to use cash collateral on an interim basis and on a continuing basis during 2011 to pay operating expenses.

       7. By this motion, debtor requests authorization to use cash collateral on an emergency basis, pending a final hearing on this motion, to pay the line item expenses set forth in the attached cash flow budget attached hereto as Exhibit "A."

       8. In addition to the use of cash collateral on an emergency basis pending a final hearing on this motion, debtor also seeks authorization to continue to use of cash collateral from and after the date of the final hearing through December 31, 2011.

       9. The amount of cash collateral sought for use during the emergency period of June 1-30, 2011, and July 1-13, 2011, is the sum of $813,499. The expenses to be paid during said period are as follows:

| Expense | June, 2011 | July 1-13, 2011 |
|---|---|---|
| Feed | $425,723 | $215,807 |
| Wages | 32,130 | 16,601 |
| Payroll taxes | 3,213 | 1,660 |
| Custom work | 1,285 | 664 |
| Repairs and Maintenance | 9,639 | 4,980 |
| Supplies | 16,708 | 8,633 |
| Vet and Breeding | 7,069 | 3,652 |
| Testing and Trimming | 4,498 | 2,324 |
| BST | 0 | 0 |
| State Assessment | 13,173 | 6,806 |
| Bedding | 0 | 0 |
| Hauling | 1,285 | 664 |
| Utilities | 12,852 | 6,640 |
| Fuel and Taxes | 8,033 | 4,150 |
| Professional Fees | 292 | 146 |
| Insurance | 2,892 | 1,494 |
| Other | 321 | 166 |
| **TOTAL:** | **$539,112** | **$274,387** |

It should be noted that of the feed amount, $50,000 is needed to pay Stanlee Hay Company for pre-petition hay; otherwise, Stanlee Hay Company will not provide the hay needed and the debtor has attempted to find hay elsewhere but has been unable to do so.

10. If the debtor is not permitted to use cash collateral to pay ongoing operating expenses, debtor will be unable to continue its operation, and will be unable to fund the Plan to be proposed hereafter. All expenses sought to be paid on an emergency basis are necessary in order for the debtor to continue its operation. If the debtor is not allowed to use cash collateral on an emergency and on a continuing basis the debtor will suffer irreparable harm, which will be detrimental not only to the debtor but also to all creditors and other parties in interest.

11. Debtor's projected income from the sale of milk and cull cow proceeds in 2011 is included in the line-item budget that is attached hereto as Exhibit "A."

12. Debtor is willing to give adequate protection to D. L. Evans Bank, by granting

Amended Motion . . . Use of Cash Collateral - 3

said creditor a post-petition lien in the same priority and to the extent said lien existed pre-petition, which includes, but is not limited to, milk, milk proceeds, cull cow proceeds and purchased cows and feed.

13. Debtor is willing to give adequate protection to MetLife by granting said creditor a post-petition lien in the same priority and to the extent said lien existed pre-petition, which includes, but is not limited to, all milk and cream, all accounts and rights to payment from milk.

14. Debtor is willing to give adequate protection to Rocky Mountain merchandising by granting said creditor a post-petition lien in the same priority and to the extent said lien existed pre-petition, which includes, but is not limited to, dairy cows and milk.

15. If the Court determines the adequate protection proposed by the debtor is not sufficient, then debtor requests a determination be made as to the amount to be paid as adequate protection.

16. As best as it can be determined by the debtor, based upon current market values, the estimated fair market value of the various assets, including, among other things, all of debtor's farm products, including livestock, milk and feed and all of debtor's crops and rights to payment, of the lien holders is in excess of the amount of the indebtedness owed and the amount of cash collateral sought to be used.

17. In the event any creditors' names appear on any checks received from the sale of milk and cull cows, said parties should be required to endorse the same.

18. This motion is made in accordance with the guidelines set forth in the local bankruptcy rules pertaining to motions for use of cash collateral, and does not contain any provisions that would not normally be approved by the Court.

WHEREFORE, debtor in possession prays that an order be issued granting debtor in possession the right to use cash collateral on an emergency and a continuing basis,

Amended Motion . . . Use of Cash Collateral - 4

namely, proceeds from the sale of milk and cull cows to pay the ongoing expenses set forth in the budget that is attached hereto and by reference made a part hereof, and that debtor be entitled to do so until further order of this Court.  Debtor further requests that all parties named on checks be required to endorse all checks received from the sale of milk and cull cows to the extent of the cash collateral authorized to be used by the debtor.

   DATED this <u>26th</u> day of May, 2011.

                ROBINSON ANTHON & TRIBE


            By: <u>/s/ Brent T. Robinson</u>
              Brent T. Robinson
              Attorney for Debtor